## In re Saunders's Adoption.

*William C. A. Henry*, for petitioners.

GEST, J., June 27, 1930.—This is the petition of Edward A. Coughlin and Alice B., his wife, for the adoption of Edward Saunders. Van Dusen, J., who presided at the hearing of the petition, dismissed it on the ground that on the facts of the case this court had no jurisdiction, and exceptions have been filed by the petitioners to the decree.

The child was born on July 18, 1925, in St. Mary's Hospital, Buffalo, New York, and is the illegitimate child of Mary Saunders. His father is not certainly known, but at all events has not acknowledged his paternity. A few days prior to Jan. 3, 1927, the mother came to Philadelphia and arranged with St. Vincent's Hospital to take the child, and on Jan. 3, 1927, a lay worker connected with the hospital brought the child to Philadelphia and placed it in this hospital by the written authority of its mother, stated literally as follows: "For and in consideration of expense incurred by the Managers of St. Vincent's Hospital for Women and Children, as in the case of my child, Edward, aged seventeen months, and in consideration of a suitable place being found for him in a good family into which he may be adopted and suitably provided for and educated, I hereby engage of my own free will to give up to the Managers of the said institution to be placed as they may judge best or for adoption into a good family, and in the case of the latter I now agree that I will not seek to discover, molest or deprive them of the child, but that I will rely upon the Sisters and Managers to dispose of him as they may judge best for his good, and I now agree to give up to them fully and unreservedly. January 3, 1927. Signed Mary R. Saunders, Witness Agnes Moran."

On June 10, 1927, St. Vincent's Hospital placed the child in the custody of the petitioners, who at that time resided at No. 5336 North Carlisle Street, Philadelphia, but who removed on Sept. 1, 1929, to Overbrook Hills, in Montgomery County, of which county they were residents when they filed this petition on April 11, 1930.

The Adoption Act of April 4, 1925, P. L. 127, provides that the petition for adoption shall be presented to the Orphans' Court of the county where the

petitioners are resident, and the petitioners in this case are not residents of Philadelphia County. The Amending Act of April 26, 1929, P. L. 822, provides that the petition may be presented to the Orphans' Court of the county in which the person to be adopted is a resident, and Van Dusen, J., being of the opinion that Edward Saunders, the person to be adopted, was not a resident of Philadelphia County, dismissed the petition for want of jurisdiction.

It is argued in behalf of the exceptant petitioners that St. Vincent's Hospital, located in Philadelphia, stands *in loco parentis* to the child by virtue of the contract made with it by the child's mother, and, therefore, the legal residence of the child is in Philadelphia.

The residence of an illegitimate child is that of its mother, and if it were necessary to distinguish in the present case between residence and domicile, it may be observed that the word resident seems to have been used advisedly in this act, as it is the act relating to the appointment of guardians of minors resident within the county. Domicile and residence are not convertible terms, for a domicile may be acquired by the shortest residence, while, again, the longest residence may be insufficient to secure it. It is clear, however, that both the domicile and the residence of the mother of this child, so far as the record shows, remain in Buffalo, New York. She never lived in Philadelphia, and has no intention of living here.

The hospital was incorporated, it seems, by the Act of Feb. 20, 1858, P. L. 58, as St. Vincent's Home for "the reception and nurture of destitute infants and foundlings, and to found a lying-in hospital for poor and friendless females of all persuasions in religion," and while its name was subsequently changed to St. Vincent's Hospital for Women and Children, we are not advised that its power were enlarged, so far as the present case is concerned.

It is claimed by the learned counsel for the petitioners that St. Vincent's Hospital, by virtue of its agreement with the mother of the child, stands *in loco parentis* to it, and, therefore, its legal residence is established in this city. It may readily be conceded that the hospital is *in loco parentis* for some purposes, but it does not follow that the legal residence of the child for the purpose of its adoption is that of the hospital. Residence, in the sense in which the word is used in the Adoption Act, means, in our opinion, the settled habitat or place of abode. The contract, as it is called, between the mother and St. Vincent's Hospital distinctly contemplates, however, a change of abode. The mother simply surrendered the custody of the child to the hospital for a special and limited purpose, viz., "to be placed as they may judge best or to be adopted into a good family." St. Vincent's Hospital has selected as a good family that of the petitioners, and we may assume has exercised a sound discretion. It has the right and duty resulting from its acceptance of the child to agree to or dissent from a proceeding to adopt the child, and we would require its consent to any proposed adoption. This, however, is not the question before us. A baby is not property that can be transferred by assignment. The mother still retains her natural rights and duties, and if her maternal instinct should revive, she might claim the child or object to the particular persons to whom the hospital might surrender it for the purpose of adoption. In cases like the present, where the child has been in the custody of a charitable institution, it has been our practice to require not only the consent of the institution to the petition, but that of the mother also if she can be found.

We have thus indicated our views regarding the rights and duties of the hospital under its agreement with the mother and the circumstances of the case. The only question, however, before us is that of jurisdiction, and, in our opinion, that is not affected by the so-called contract.

It seems to us to be very unfortunate that the Act of 1929 was passed to enable the adoption to be decreed in the county where the person to be adopted is a resident. The welfare of the child is the important matter for consideration of the court, and we must be satisfied, in the language of the Adoption Act of 1925, that "the welfare of the person proposed to be adopted will be promoted by such adoption." This means that we should ascertain the character and respectability of the adopting petitioners and their ability to support the child, and this can best be done, and should always be done, by the court of the county where the petitioners reside and where they are known. And in order that we may be sure that their residence is *bona fide*, this court has inserted a requirement in our blank forms of petition that the petitioners shall set forth their residence or residences for the past five years.

In the present case, the mother resides, or did reside, in Buffalo. St. Vincent's Hospital has only temporary custody of the infant for a special purpose, and the petitioners reside in Montgomery County, close to Philadelphia, it is true, but they might as well be residents of Erie County, hundreds of miles away.

This petition should have been presented to the Orphans' Court of Montgomery County, where the petitioners reside.

The decree dismissing the petition was clearly correct, and the exceptions filed thereto are dismissed.